WESTERN HORSE AND CATTLE INSURANCE COMPANY, PLAINTIFF IN ERROR, v. THOMAS O'NEILL, DEFENDANT IN ERROR.

**Insurance on Live Stock.** One O'N. insured a mare for the sum of $100 in the W. H. & C. Ins. Co., and afterwards violently beat and abused said mare by striking her with an iron rod *Held*, That a preponderance of the testimony clearly established the fact that the death of said mare was the result of such striking and abuse, and that O'N. was not entitled to recover the amount of the insurance for the death of said mare.

ERROR to the district court for Platte county. Tried below before POST, J.

*Higgins & Garlow* and *Charles Ogden,* for plaintiff in error.

*McAllister Bros.,* for defendant in error.

MAXWELL, CH. J.

This is an action brought upon an insurance policy on one bay gelding, six years old, and one bay mare, eight years old, it being alleged said gelding died from disease

April 18th, 1885, and said mare died from disease May 13th, 1885.

The defendant in its answer admits insuring the property, but alleges "that said bay gelding died by reason of abuse of plaintiff, and for want of proper and reasonable care, and defendant denies that said policy was in force at the time of the death of the said mare, but alleges that said policy contained a condition that the defendant corporation reserved the right to cancel said policy at any time by giving notice to that effect to the policy holder, and returning to him the amount of unearned premium; and that in pursuance of said condition said defendant did, on the 9th day of May, 1885, cancel said policy in accordance with said condition.

"And defendant further alleges that said last named animal died by reason of the abuse of said plaintiff, and for want of proper and reasonable care."

In reply the plaintiff admits that said policy of insurance contains a provison therein as stated in defendant's answer, viz., that said defendant corporation reserves the right to cancel said policy of insurance at any time by giving notice to that effect to the policy holder, and returning to him the unearned premium; but denies that said defendant canceled said policy in manner and form as stated in their answer, also denies all other new matter contained in said answer as a defense.

On the trial of the cause the jury returned a verdict in favor of O'Neill for $227, and judgment was rendered thereon.

The gelding was insured for the sum of $115, and the mare for the sum of $100.

After a pretty careful examination of the testimony we think the insurance company has failed to establish any defense against the payment of the insurance on the gelding, as there is no proof that such gelding died from the fault of O'Neill.

In regard to the mare, however, we think the company has established a complete defense against the payment of the insurance on her.

One W. M. Abbott testifies as follows: " I reside in Humphrey, Platte county; have lived there for two years; am acquainted with Thomas O'Neill; was acquainted with him last spring; I saw Mr. O'Neill in Humphrey in the early part of the month of April of last year (1885), when he came to take a calf from my house; had a conversation with him; Mr. O'Neill stated in my presence that the animal he whipped was one covered by this insurance; it was after he had commenced this action; it was in Humphrey; he took an iron rod out of the wagon and whipped her with it; I thought at the time it was an end-gate rod; he whipped her very hard, knocked her down several times with the rod and beat her bad; he struck her pretty near all over with the rod; he bent the rod several times by beating her and then would straighten it out again; he beat her over the head and over the sides and back; she looked pretty hard when he was through beating her, she had been badly whipped; there were ridges on her, she was swelled up in places, and the blood run from her nostrils; cannot say how long this beating continued, should think something like half an hour; when the animal was down he kept on pounding; there were several of the citizens came around and interfered and caused him to desist; it caused quite a crowd to come around, several tried to stop him; I think he told one man that it was his horse and he would whip it as long as he pleased, and if he didn't get away he would whip him; he had an iron rod in his hand at the time, a rod about the size of an end-gate rod; I thought it was the end-gate rod, and think so yet; about every time he would hit her she would grunt; I think Mr. Blœdorn came up and caused him to desist beating her; when he stopped beating I think she was lying down, she did not lie long; he was beating her over the head when she fell;

I think her method of going down indicated that she was knocked down. ,

### CROSS-EXAMINATION.

I think it was the mare that he whipped, a bay mare, very thin in flesh ; I do not think she fell over the tongue ; she would not often rear up when he struck her over the head ; a balky horse sometimes throws himself.

### REDIRECT.

Q. State what statements Mr. O'Neill made to you when you say he talked to you in the saloon.

A. He said if they would pay him for the other horse that died he would not sue for the mare that was whipped. Mr. O'Neill spoke of this mare as having died ; he told me she was dead, after he commenced this action ; I didn't think she would live to get home."

There is a large amount of other testimony corroborating that of Mr. Abbott, and a clear preponderance of the testimony establishes the fact that the mare died as a 'result of the beating. O'Neill therefore cannot take advantage of his own wrong, and is not entitled to recover for the loss of the mare.

The insurance company attempted to cancel the policy in question on the 9th day of May, 1885, after the death of the horse but before the death of the mare. There is a conflict in the testimony as to the time such cancellation actually took place, but in the view that we take of the case it is immaterial whether it was canceled before the death of the mare or afterwards.

The judgment for the amount of insurance on the mare is reversed, and for the insurance on the horse is affirmed, and judgment will be entered in this court in conformity to this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.