STATE vs. FRANCIS C. WATSON.

WASHINGTON—JANUARY 12, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

After a decree of divorce has been set aside the prior marriage is in full force.

Courts have power to set aside or amend their judgments for cause, such power being inherent in the court as a part of its machinery for the due administration of justice.

Whenever a judgment is obtained by the fraud of the party in whose favor it is rendered, and the other party is not implicated therein, this is a sufficient cause for vacating the judgment.

Decrees in divorce suits are not exempt from the operation of this rule.

The rules of criminal pleading require a plea to the jurisdiction to precede the plea of not guilty. If the special plea be determined against the defendant the practice allows him to plead over.

After a plea of not guilty the defendant cannot file any other plea without leave of court.

A plea of *autrefois convict* must allege that the two offences are the same ; if the offences charged in the two indictments be distinct, though committed concurrently, they may be separately prosecuted.

A motion to quash an indictment or other criminal process is addressed to the discretion of the trial court.

Such motions can be granted only for defects apparent on the record ; matters *dehors* the record should be set up by plea.

DEFENDANT'S petition for a new trial of an indictment.

TILLINGHAST, J.   The defendant, who has been convicted of the crime of adultery with one Mary A. Watson, now petitions for a new trial on numerous grounds, the substance of which, so far as we are able to understand them from the confused statement thereof, is that the verdict is against the evidence and that the court erred in certain rulings which will be hereinafter mentioned.

The uncontradicted testimony offered by the State shows that the defendant lived with the said Mary A. Watson as his wife for nearly six years, during two of which he lived with her in Hopkinton in this State, and that he had three children by her.   While the defendant does not attempt to deny that he lived with said Mary as his wife, yet he contends, and sets up as a defence to the indictment, that such

cohabitation was not adulterous because, as he alleges, he had obtained a divorce from his former wife, and that he was lawfully married to said Mary at that time ; and the vital question, therefore, is as to the validity of said divorce.

The facts are these : In 1870 the defendant was lawfully married to Melinda Buddington in the State of Connecticut. On the 21st day of May, 1889, the Superior Court of Windham County, Conn., upon a petition filed by him, granted a decree divorcing him from his said wife.   On the 23d day of May, 1889, two days after the said decree was granted, the defendant married said Mary A. Watson, in Stirling, Conn., and subsequently lived with her as his wife as aforesaid.   Shortly after said divorce was granted, the respondent therein filed a petition in said Superior Court asking that said decree be set aside and the case re-entered upon the docket, which motion, after notice and hearing, was, on the 18th day of June, 1889, granted, the court finding that the respondent therein was prejudiced by the decree ; that she had a good defence to the action, and was prevented by mistake and accident from appearing to oppose the same.   The court also found that said respondent had employed counsel to oppose the granting of the petition for divorce, and that her counsel had actually appeared to defend the suit but had not entered his appearance upon the docket ; and also that the petitioner knew that the respondent had so appeared.

In view of these facts the court, Douglas, J., charged the jury in the case at bar that said Melinda Watson continued to be the wife of this defendant from the time of said first mentioned marriage in 1870, except at most during the interval from the 21st of May, 1889, to the 19th of June, 1889, and that what the relations of the parties were under the law of Connecticut during the term at which the decree of divorce was entered it was not necessary for the jury to consider, as it did not affect the case.

The defendant's counsel requested the court to charge as follows :

1.   " That a man who in good faith marries a woman, when he was divorced from his former wife, and the divorce

was believed by both of them (parties to the second marmiage) to be valid and conclusive, he cannot be convicted of adultery with her (2nd wife) if neither he nor she were married persons, but single, at the time of their marriage to each other, unless they had been divorced from each other since their marriage and before the alleged adultery."

2. "After a divorce from a former wife a man does not, by cohabiting as man and wife under his second marriage or by having carnal knowledge of the body of his second wife, commit the crime of adultery. But the indictment should allege the second marriage, and all the other facts constituting bigamous cohabitation if the second marriage took place in another State; and if the jury find these facts to be true, there is a variance between the evidence and the pleadings, and verdict should be 'not guilty.'"

In reply to these requests the court said: "I understand the first request to apply in this way: That if, during the time that the decree of divorce was in force—that is to say, from May 21st, 1889, to the 18th of June, 1889—that on the 23d of May, when the ceremony of marriage was gone through, these parties were not living in adultery. I will charge you for the purposes of this case that that is so. But you see that is not the time that this indictment charges them with having committed adultery."

"The second is that after the divorce from the former wife the man does not, by cohabiting as man and wife under his second marriage, or by having carnal knowledge of the body of his second wife, commit the crime of adultery. That I refuse."

We do not see that the defendant has any ground to complain of this instruction. After the decree of divorce was set aside in manner aforesaid, it is clear that the first mentioned marriage was in full force; and, therefore, the defendant was a married man and had a wife living at the time of the commission of the alleged crime of adultery, if, indeed, such was not the case at the date of his second marriage.

It is evident, from an inspection of the record of the divorce

proceedings, that the Connecticut court was imposed upon and deceived by the defendant in connection with the granting of said decree; in short, that the decree was obtained by fraud. And upon this fact being shown by the respondent in that case, said court promptly righted the wrong thus perpetrated and placed the parties to the suit where they were before.

That, as a general proposition, courts have power to set aside, vacate, modify or amend their judgments for good cause no one will question, such power being inherent in the court as a part of its necessary machinery for the due administration of justice. And whenever a judgment is obtained by the fraud of the party in whose favor it is rendered, and the other party is not implicated therein, of course this constitutes a good and sufficient cause for vacating the judgment. Decrees in divorce suits are not exempted from the operation of this rule, although courts are more reluctant to disturb a decree of divorce, especially after a second marriage involving the interest of third persons. A full discussion of the general question involved may be found in the cases cited in 2 Bish. Mar. Div. & Separation, § 1552, note 3 ; also 1 Black Judg. § 320.

In *Bradstreet* v. *Ins. Co.*, 3 Sum. 604, Story, J., says : "I know of no case where fraud, if established by competent proofs, is not sufficient to overthrow any judgment or decree, however solemn may be its form of promulgation."

In *Adams* v. *Adams*, 51 N. H. 388, which is a leading case upon the subject under consideration, Bellows, C. J., says : "This doctrine, in regard to impeaching judgments and decrees for fraud, has been applied in numerous cases to decrees in divorce suits and suits for nullity of marriage, and the weight of authority is greatly in favor of such application. Upon principle, there is no solid ground for any distinction between decrees in divorce suits and other judgments ; or if there be any, it is to be found in the much greater danger of fraud and imposition in divorce cases, as compared with others ; thus adding largely to the necessity and importance of preserving the power to correct or vacate

decrees that have been obtained by fraud and imposition. Accordingly it is laid down, in Bish on Mar. Div. & Separation, sec. 699, that if a tribunal has been imposed upon, and in consequence of the fraud a judgment of divorce has been wrongfully rendered, it may vacate this judgment, when, upon a summary proceeding, it is made cognizant of the fraud."

To the same effect are *Edson* v. *Edson*, 108 Mass., 590; *Bomsta* v. *Johnson*, 38 Minn. 230; and *Wisdom* v. *Wisdom*, 24 Neb. 551.

It is clear, then, that whatever the status of the defendant was between the time of the granting of said decree of divorce and the annulment thereof, yet the said Matilda Watson was his lawful wife during the time covered by the indictment in this case.

The next error alleged to have been committed by the presiding justice is that he overruled the defendant's plea to the jurisdiction of the court. The record shows that on March 23d, 1896, the defendant was arraigned and pleaded "not guilty," and that on May 19th, 1896, without having asked or obtained permission to retract this plea, and without permission to file any further plea, he filed a plea to the jurisdiction, as he styles it (although in fact it is a plea of *autrefois convict*, which is a plea in bar), in which he sets up former jeopardy and former punishment for the same or a kindred offence. On June 8, 1896, the defendant also filed a motion to dismiss the indictment for want of jurisdiction, on the ground of former jeopardy. On June 10th he filed what he denominates a "Motion to quash, in the nature of a substantial demurrer," on the ground that the indictment charges no offence known to the law, and for various other reasons not appearing of record. On the same day he made a motion for leave to withdraw his plea of "not guilty," which was denied by the court, whereupon the trial of the case proceeded and the jury found the defendant guilty.

First, then, as to said plea to the jurisdiction. This plea was filed too late. The rules of criminal pleading require that a plea to the jurisdiction, like a demurrer, plea in abate-

ment, plea in bar, or any other special plea whatever, shall precede the plea of not guilty. If the special plea is determined against the defendant, the practice is to then allow him to plead over. *State* v. *Edgerton*, 12 R. I. 108. Moreover, after a plea of not guilty the defendant cannot file any other plea without leave of court. *Com.* v. *Blake*, 12 Allen, 188; *Com.* v. *Lannan*, 13 Allen, 563. We have, however, examined said plea to the jurisdiction, but do not find that it would have been of any avail if it had been filed in season. It sets out, or attempts to set out, a former conviction of the defendant for bigamous cohabitation with the said Mary A. Watson, the indictment in which case covers and includes the same time on which the offence is laid in the one before us. It also sets out that the defendant was imprisoned for six months and ten days for said offence, and he refers to the record of said case in support of his allegation. As that case was before this Division on *habeas corpus*, we can properly take notice of the facts therein, and they are these : The defendant was convicted of bigamous cohabitation with said Mary A. Watson, as alleged in the plea, and was sentenced therefor to imprisonment for the term of four years. Some time after he was committed he obtained a writ of *habeas corpus* on the ground that the indictment stated no offence known to the law, and after hearing thereof this court decided that the indictment was fatally defective and ordered the defendant discharged from imprisonment. See *Watson, Pet'r*, 19 R. I. 342. It will at once be seen, therefore, that said plea to the jurisdiction, so-called, is without any force or validity. The indictment on which he was tried, convicted and sentenced, was not only for another and distinct offence from that with which he is charged in the indictment now before us, but, by reason of being fatally defective in the manner aforesaid, was a mere nullity. " Where there is no jurisdiction," as said by Mr. Wharton, in his work on Crim. Pl. & Pr., 9 ed. § 507, " or where the indictment is defective, even in a capital case, it is agreed on all sides the defendant has never been in jeopardy, and consequently, if judgment be arrested, a new indictment can

be preferred, and a new trial instituted, without violation of the constitutional limitation. Even partial endurance of punishment under a defective indictment will be no bar when the proceedings are reversed on the defendant's motion ; although it is otherwise when the judgment is unreversed. But a judgment erroneously arrested on a good indictment may be a bar." See also *Kohlheimer* v. *State,* 39 Miss. 548, cited by counsel for defendant. Moreover, a plea of *autrefois convict* must allege that the two offences are the same ; for when the offences charged in the two indictments are distinct, though committed concurrently, they are separably prosecutable. Thus the fact that a person has been convicted of keeping a drinking-house and tippling-shop is no bar to an indictment for presuming to be a common seller, although both indictments cover the same period of time and are supported by the same acts of illegal sale. *State* v. *Inniss,* 53 Me. 536. Blackstone says that the pleas of former acquittal or former conviction must be upon a prosecution for the identical *act and crime.* 4 Black. Com. 336. And Chief Justice Shaw says that, in considering the identity of the offence, it must appear by the plea that the offences charged in both cases are the same *in law* as well as *in fact;* and that the plea will be vicious if the offence charged in the two indictments be perfectly distinct *in point of law,* however nearly they may be connected *in fact.* *Com.* v. *Roby,* 12 Pick. 496 ; Rice Crim. Ev. § 385 and cases cited ; *Com.* v. *Putnam,* 1 Pick. 136 at p. 140.

As to the defendant's motion to dismiss, it is sufficient to say that it is based upon the same ground as the plea which we have just passed upon, and hence requires no further consideration.

The defendant's "Motion to quash, in the nature of a substantial demurrer," was properly overruled. A motion to quash an indictment or other criminal process is addressed to the discretion of the trial court, and, as said by Ames, C. J., in *State* v. *McCarthy,* 4. R. I. 84, "is never granted unless by this short dealing the ends of justice can be as well attained, and the rights and equities of the parties as well

observed as by allowing the cause to go on to its termination in the accustomed mode." See also Chit. Cr. L. 300–303. We have, however, examined the indictment in the case at bar, and find that it is in the ordinary form and clearly and technically sets out and charges the crime of adultery.

As to that part of the motion which sets up matters *dehors* the record, we reply that, in the first place, it sets out no ground of defence, and, in the second place, even if it did, the matter should have been set up by plea and not by motion to quash, as the latter can be granted only for defects apparent on the record. *Howland* v. *School Dist.* 15 R. I. 184. See also *State* v. *Drury*, 13 R. I. 540; *State* v. *Maloney*, 12 R. I. 251; Whart. Cr. Pl. & Pr. §§ 386–8.

The only remaining motion to be considered in this case is that in arrest of judgment, which is merely a rehash of the defendant's plea to the jurisdiction, so-called, and of his subsequent motions which we have already considered. The motion is coupled with an argument to the effect that the defendant, if indictable at all, should have been indicted for some other offence than that of adultery, and also that one of the guilty parties cannot be indicted without the other. It would not seem to require a very thorough knowledge of criminal pleading in order for counsel to avoid mistakes of this sort, as well as those hereinbefore pointed out. The motion in arrest of judgment is overruled.

We have examined the numerous other grounds contained in the defendant's petition for a new trial, but do not find that they are entitled to any serious consideration.

Petition denied, and case remitted to the Common Pleas Division for sentence.

*Willard B. Tanner, Attorney-General, and Charles F. Stearns, Assistant Attorney-General,* for the State.

*James E. Dennison and George R. McKenna,* for defendant.